UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

ROBERT G.,

                        Plaintiff,

v.                                           5:19-CV-0576
                                           (ML)

ANDREW SAUL,
Commissioner of Social Security Administration,

                        Defendant.
———————————————————————

APPEARANCES:                               OF COUNSEL:

Legal Aid Society of Mid-New York, Inc.     ELIZABETH V. KRUPAR, ESQ.
  Counsel for the Plaintiff
221 South Warren Street, Suite 310
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION     AMELIA STEWART, ESQ.
  Counsel for the Defendant                ARIELLA R. ZOLTAN, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER**

      Currently pending before the Court in this action, in which Plaintiff seeks judicial review

of an adverse administrative determination by the Commissioner of Social Security, pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

argument was heard in connection with those motions on July 27, 2020, during a telephone

---

    [1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. §
636(c), has been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order once issue has been joined, an action such as this is considered
procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule
12(c) of the Federal Rules of Civil Procedure.

conference conducted on the record.  At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED.

2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) This matter is REMANDED to the Commissioner, without a directed finding of disability, for further administrative proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g).

4) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, REMANDING this matter to the Commissioner for further administrative proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

Dated: August 4, 2020
       Binghamton, New York

Miroslav Lovric
United States Magistrate Judge
Northern District of New York

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERT G.,

                                        Plaintiff,

-v-                                     19-CV-576

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------x


**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE MIROSLAV LOVRIC**
July 27, 2020
15 Henry Street, Binghamton, New York



For the Plaintiff:
(Appearance by telephone)

      LEGAL AID SOCIETY OF MID-NEW YORK, INC.
      221 South Warren Street
      Suite 310
      Syracuse, New York 13202
      BY:  **ELIZABETH V. KRUPAR, ESQ.**


For the Defendant:
(Appearance by telephone)

      SOCIAL SECURITY ADMINISTRATION
      625 JFK Building
      15 New Sudbury Street
      Boston, Massachusetts 02203
      BY:  **AMELIA STEWART, ESQ.**




*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

```
 1              (The Court and all parties present by telephone.

 2   Time noted:  10:16 a.m.)

 3              THE COURT:  So first, by way of introduction, this

 4   matter was referred to me, for all proceedings and entry of a

 5   final judgment, pursuant to the Social Security Pilot Program,

 6   here in the Northern District of New York, pursuant to General

 7   Order No. 18, also in accordance with the provisions of Title 28

 8   U.S.C. Section 636(c), and then additionally, Federal Rule of

 9   Civil Procedure 73, in the Northern District of New York, Local

10   Rule 73.1, and then lastly, the consent of the parties.  This

11   action involves judicial view of an adverse determination by the

12   Commissioner of Social Security, pursuant to 42, United States

13   Code, Sections 405(g) and 1383(c)(3).

14              In this appeal, I have reviewed the following:  The

15   Social Security Administrative Record and transcript found at

16   Docket No. 11, including the Administrative Law Judge's hearing

17   decision and transcript of oral hearing, and that's found at

18   Administrative Transcript -- which I'll refer to in these

19   proceedings simply by the letter T -- that's found at T. 12

20   through 28 and 154 to 194.  I've also reviewed the plaintiff's

21   brief at Docket No. 12, the defendant's brief at Docket No. 16,

22   and I also generally reviewed the other entries on the docket.

23   And then lastly, I have taken into consideration today's oral

24   arguments from the parties that was presented a few moments ago.

25              I find the procedural history of this case as
```

1   follows:  The plaintiff filed for DIB benefits on January 29,

2   2016, alleging disability beginning on May 29, 2015, see T. 15.

3   The claim was denied initially on April 28, 2016, it can be

4   found at T. 209 to 214.  On May 23, 2016, plaintiff requested a

5   hearing before an Administrative Law Judge, see T. 15 and 216.

6   The hearing was held in front of ALJ Kenneth Theurer on

7   February 12, 2018, see T. 15 and also 154 to 194.  Additionally,

8   Andrew Caporale, a vocational expert that I'll refer to as VE,

9   also appeared and testified at the hearing.  On March 28, 2018,

10  the ALJ issued an unfavorable decision as to plaintiff, see T.

11  12 through 28.  The ALJ utilized the five-step process for

12  evaluating disability claims, see T. 15 through 24, and found

13  that plaintiff was not disabled from the alleged onset date

14  through the date of the decision, March 28th of 2018, because,

15  according to the ALJ, plaintiff was capable of performing jobs

16  that existed in significant numbers in the national economy, T.

17  23 to 24, see also 20 C.F.R. Section 404.1520(a)(4)(i)-(v)

18  describing the steps in the sequential evaluation.  See also 20

19  C.F.R. Section 404.1566(b), if the claimant can perform work in

20  the national economy, he is not disabled.

21          Plaintiff requested review of the hearing decision

22  before the Appeals Council on May 29, 2018, T. 277.  On

23  March 29, 2019, the Appeals Council denied the request for

24  review, T. 1 through 6, after which time the Commissioner's

25  determination became final and this appeal followed.

```
 1              I want to generally state applicable law that I'm
 2    applying in reviewing this appeal.  First, the disability
 3    standard.  To be considered disabled, a plaintiff seeking
 4    disability insurance benefits, or SSI disability benefits, must
 5    establish that she is unable to engage in any substantial
 6    gainful activity by reason of any medically determinable
 7    physical or mental impairment which can be expected to result in
 8    death or which has lasted or can be expected to last for a
 9    continuous period of not less than 12 months, see 42 U.S.C.
10    Section 1382C(a)(3)(A).  In addition, the plaintiff's physical
11    or mental impairment or impairments must be of such severity
12    that he is not only unable to do previous work, but cannot,
13    considering his age, education, and work experience, engage in
14    any other kind of substantial gainful work which exists in the
15    national economy, regardless of whether such work exists in the
16    immediate area in which he lives, or whether a specific job
17    vacancy exists for him, or whether he would be hired if he
18    applied for work, see 42 U.S.C. Section 1382c(a)(3)(B).
19              The Commissioner uses a five-step process, set forth
20    in 20 C.F.R. Sections 404.1520 and 416.920, to evaluate
21    disability insurance and SSI disability claims.
22              First, these steps are as follows in summary:  First,
23    the Commissioner considers whether the claimant is currently
24    engaged in substantial gainful activity.  If he is not, the
25    Commissioner next considers whether the claimant has a severe
```

1   impairment which significantly limits his physical or mental

2   ability to do basic work activities.  If the claimant suffers

3   such an impairment, the third inquiry is whether, based solely

4   on medical evidence, the claimant has an impairment which meets

5   or equals the criteria of an impairment listed in Appendix 1 of

6   the regulations.  If the claimant has such an impairment, the

7   Commissioner will consider him disabled without considering

8   vocational factors such as age, education, and work experience.

9   Assuming the claimant does not have a listed impairment, the

10  fourth inquiry is whether, despite the claimant's severe

11  impairment, he has the residual functional capacity to perform

12  his past work.  Finally, if the claimant is unable to perform

13  his past work, the Commissioner then determines whether there is

14  other work which the claimant can perform, see *Berry v.*

15  *Schweiker*, 675 F.2d 464 at 467, Second Circuit, 1982, see also

16  20 C.F.R. Sections 404.1520 and 416.920.

17          The plaintiff has the burden of establishing

18  disability at the first four steps.  However, if the plaintiff

19  establishes that her impairment prevents her from performing her

20  past work, the burden then shifts to the Commissioner to prove

21  the final step.

22          The second area of law that I have applied and keep

23  in mind is the scope of my review.  In reviewing a final

24  decision of the Commissioner, a court must determine whether the

25  correct legal standards were applied and whether substantial

1  evidence supported the decision, see *Selian v. Astrue*, 708 F.3d

2  406 at 417, Second Circuit, 2013, see also *Brault v. Social*

3  *Security Administration Commissioner*, 683 F.3d 443 at 448,

4  Second Circuit, 2012, additionally see 42 U.S.C. Section 405(g).

5  Substantial evidence is such relevant evidence as a reasonable

6  mind might accept as adequate to support a conclusion, see

7  *Talavera v. Astrue*, 697 F.3d 145 at 151, Second Circuit, 2012.

8  It must be more than a scintilla of evidence scattered

9  throughout the administrative record.  However, this standard is

10 a very deferential standard of review, even more so than the

11 clearly erroneous standard, see *Brault,* 683 F.3d at 448.

12        To determine on appeal whether an ALJ's findings are

13 supported by substantial evidence, a reviewing court considers

14 the whole record, examining the evidence from both sides,

15 because an analysis of the substantiality of the evidence must

16 also include that which detracts from its weight, see *Williams*

17 *on behalf of Williams v. Bowen*, 859 F.2d 255 at 258, Second

18 Circuit, 1988.  However, a reviewing court may not substitute

19 its interpretation of the administrative record for that of the

20 Commissioner, if the record contains substantial support for the

21 ALJ's decision, see also *Rutherford v. Schweiker*, 685 F.2d 60 at

22 62, Second Circuit, 1982.  In reviewing a final decision by the

23 Commissioner under 42 U.S.C. 405, the Court does not determine

24 de novo whether a plaintiff is disabled, see 42 U.S.C. Sections

25 405(g), 1383(c)(3), and see also *Wagner v. Secretary of Health*

1  *and Human Services* at 906 F.2d 856 at 860, Second Circuit, 1990.

2  Rather, the Court must examine the Administrative Transcript to

3  ascertain whether the correct legal standards were applied, and

4  whether the decision is supported by substantial evidence, see

5  *Shaw v. Chater*, 221 F.3d 126 at 131, Second Circuit, 2000, also

6  *Schaal v. Apfel*, 134 F.3d 496, at 500 to 501, Second Circuit,

7  1998.

8          Substantial evidence is evidence that amounts to more

9  than a mere scintilla, and it has been defined as such relevant

10  evidence as a reasonable mind might accept as adequate to

11  support a conclusion, *Richardson v. Perales*, 402 U.S. 389, at

12  401, 1971.  If supported by substantial evidence, the

13  Commissioner's factual determinations are conclusive, and it is

14  not permitted for the courts to substitute their analysis of the

15  evidence, see *Rutherford v. Schweiker*, 685 F.2d 60, at 62,

16  Second Circuit, 1982, essentially stating that the court would

17  be derelict in our duties if we simply paid lip service to this

18  rule, while shaping the Court's holding to conform to our

19  interpretation of this evidence.  In other words, this Court

20  must afford the Commissioner's determination considerable

21  deference, and may not substitute its own judgment for that of

22  the Commissioner, even if it might justifiably have reached a

23  different result upon a de novo review, see *Valente v. Secretary*

24  *of Health and Human Services*, 733 F.2d 1037, at 1041, Second

25  Circuit, 1984.

1          An ALJ is not required to explicitly analyze every

2     piece of conflicting evidence in the record, see example *Mongeur*

3     *v. Heckler*, 722 F.2d 1033, at 1040, Second Circuit, 1983, also

4     see *Miles v. Harris*, 645 F.2d 122, at 124, Second Circuit, 1981.

5     We are unwilling to require an ALJ explicitly to reconcile every

6     conflicting shred of medical testimony.  However, the ALJ cannot

7     pick and choose evidence in the record that supports his

8     conclusions, see *Cruz v. Barnhart*, 343 F. Supp. 2d 218, at 224,

9     Southern District of New York, 2004, see also *Fuller v. Astrue*,

10    09-CV-6279, and that can be found at 2010 WL 5072112 at *6,

11    Western District of New York, December 6, 2010.

12          In reviewing this case, I point out the following

13    general facts:  Plaintiff was born on May 2, 1967, making him

14    48 years old on the alleged onset and application dates, and

15    50 years old on the date of the ALJ's decision; plaintiff

16    reported having at least a high school education and is able to

17    communicate in English; plaintiff had past work as a meat

18    cutter, a deli cutter/slicer, and as a hand packager.

19          In summary, the ALJ found as follows in the decision:

20    First, the claimant meets -- and these are the ALJ's findings.

21    The claimant meets the insured status requirements of the Social

22    Security Act through December 31, 2020.  The claimant has not

23    engaged in substantial gainful activity since May 29, 2015, the

24    alleged onset date, see 20 C.F.R. 404.1571.  Third, the claimant

25    has the following severe impairments:  Arthritis in the knees;

1    tendonitis in the shoulders; chronic obstructive pulmonary

2    disease, also known as COPD; and depression and anxiety, see 20

3    C.F.R. 404.1520(c), which significantly limit the ability to

4    perform basic work activities as required by SSR 85-28.

5          Next, the ALJ found the claimant does not have an

6    impairment or combination of impairments that meets or medically

7    equals the severity of one of the listed impairments in 20

8    C.F.R. Part 404, Subpart P, Appendix 1, see 20 C.F.R.

9    404.1520(d), also 404.1525, and lastly, 404.1526.  The ALJ went

10   on to state, after careful consideration of the entire record,

11   the ALJ concluded that the claimant has the residual functional

12   capacity to perform less than the full range of light work as

13   defined in 20 C.F.R. 404.1567(b), with ability to occasionally

14   lift and carry 20 pounds, frequently lift and carry 10 pounds;

15   sit for up to 6 hours; stand or walk for approximately 6 hours

16   in an 8-hour day with normal breaks; occasionally climb ramps or

17   stairs, but never climb ladders, ropes, or scaffolds; can

18   perform occasional balancing, stooping, kneeling, crouching, and

19   crawling; can occasionally reach overhead, frequently in other

20   directions.  The ALJ also noted he should avoid smoke, dust, and

21   respiratory irritants.

22         Mentally, he retains the ability to understand and

23   follow simple instructions and directions; perform simple tasks

24   with supervision and independently.  The ALJ went on to say,

25   maintain attention/concentration for simple tasks; regularly

1  attend to a routine and maintain a schedule; can relate to and

2  interact with others to the extent necessary to carry out simple

3  tasks, but should avoid work requiring more complex interaction

4  or joint effort to achieve work goals.  The ALJ went on to say

5  he should have no more than incidental contact with the public

6  and can handle reasonable levels of simple work-related stress,

7  in that he can make occasional simple decisions directly related

8  to the completion of his tasks in a stable, unchanging work

9  environment.

10         The ALJ further concluded the claimant is unable to

11  perform any past relevant work, see 20 C.F.R. 404.1565.  The ALJ

12  concluded, considering the claimant's age, education, work

13  experience, and residual functional capacity, there are jobs

14  that exist in significant numbers in the national economy that

15  the claimant can perform, see 20 C.F.R. 404.1569 and 40.1569(a).

16  Finally, the ALJ's decision and conclusion was as follows:  The

17  claimant has not been under a disability, as defined in the

18  Social Security Act, from May 29, 2015, through the date of this

19  decision, 20 C.F.R. 404.1520(g).  Based on the application for a

20  period of disability and disability insurance benefits filed on

21  January 29, 2016, according to the ALJ, the claimant is not

22  disabled under Sections 216(i) and 223(d) of the Social Security

23  Act.

24         In reviewing the briefs by the parties and the

25  record, I believe that three issues in contention are before the

1    Court.  The first is whether the ALJ properly weighed the

2    opinion of Dr. Woznicki.  The second is whether the ALJ properly

3    assessed plaintiff's subjective symptoms.  And then third, and

4    lastly, is whether the substantial evidence supports -- whether

5    substantial evidence supports the ALJ's step five finding.

6            I turn next to discussion with respect to my

7    decision, discussion and analysis.  The first issue of

8    contention is whether the ALJ properly weighed the opinion of

9    Dr. Woznicki.  I find that the ALJ properly weighed the opinion

10   of Dr. Woznicki and it is my conclusion.  The Second Circuit has

11   long recognized the treating physician rule set out in 20 C.F.R.

12   404.1527(c).  The opinion of a claimant's treating physician as

13   to the nature and severity of the impairment is given

14   controlling weight so long as it is well-supported by medically

15   acceptable clinical and laboratory diagnostic techniques and is

16   not inconsistent with the other substantial evidence in the case

17   record, see *Greek v. Colvin*, 802 F.3d 370, at 375, Second

18   Circuit, 2015, quoting from *Burgess v. Astrue,* 537 F.3d 117, at

19   128, Second Circuit, 2008.

20           Application of the treating physician rule to Dr.

21   Woznicki, in my conclusion, would be inappropriate because Dr.

22   Woznicki is not plaintiff's treating physician, so my finding is

23   that the ALJ was not required to treat Dr. Woznicki as a

24   treating physician.  The record contains no evidence of a

25   doctor-patient relationship between plaintiff and Dr. Woznicki.

1   For example, Dr. Woznicki's name does not appear in any of

2   plaintiff's treatment notes or medical records from the

3   Community Clinic despite receiving treatment there between

4   January 2017 and February 2018, see T. 599 through 715.

5   Likewise, there's no evidence that any of plaintiff's progress

6   reports were provided to Dr. Woznicki.  When questioned during

7   the hearing about plaintiff's treatment at Community Clinic,

8   plaintiff did not mention Dr. Woznicki.

9           Furthermore, because there was no ongoing treating

10  relationship between plaintiff and Dr. Woznicki, Dr. Woznicki

11  did not qualify as a treating physician, see *Camarata v. Colvin*,

12  14-CV-0578, that can be found at 2015 WL 4598811, at 14 through

13  16, Northern District of New York, July 29, 2015, Judge

14  D'Agostino, finding that the Appeals Council appropriately did

15  not apply the treating physician rule to a medical source

16  statement that was prepared by a nurse practitioner and

17  registered nurse, then co-signed by a physician where the

18  physician did not have an ongoing treatment relationship with

19  the plaintiff.

20          Now, while the ALJ failed to explicitly apply the

21  *Burgess* factors when assigning the weight to Dr. Woznicki, for

22  the reasons stated in the defendant's memorandum of law, I do

23  find that even if Dr. Woznicki was a treating physician, a

24  searching review of the record assures me that the substance of

25  the treating physician rule was not traversed, see *Estrella v.*

1   *Berryhill*, 925 F.3d 90, at 95 through 96, Second Circuit, 2019.

2              Now, the second issue of contention is whether the

3   ALJ properly assessed plaintiff's subjective symptoms.  I find

4   and conclude that the ALJ properly assessed plaintiff's

5   testimony.  The evaluation of symptoms involved a two-step

6   process.  First, the ALJ must determine, based upon the

7   objective medical evidence, whether the medical impairments

8   could reasonably be expected to produce the pain or other

9   symptoms alleged, see 20 C.F.R. Sections 404.1529(a), 416.929(a)

10  and (b).  If so, at the second step, the ALJ must consider the

11  extent to which the claimant's alleged functional limitations

12  and restrictions due to pain or other symptoms can reasonably be

13  accepted as consistent with the objective medical evidence and

14  other evidence to decide how the claimant's symptoms affect her

15  ability to work, see *Barry v. Colvin*, 606 F. App'x 621 at 623,

16  Second Circuit, 2015, citing inter alia 20 C.F.R. Section

17  404.1529(a), see also *Genier v. Astrue*, 606 F.3d, at 49.  If the

18  objective medical evidence does not substantiate the claimant's

19  symptoms, the ALJ must consider the other evidence, see *Cichocki*

20  *v. Astrue*, 534 F. App'x 71, at 76, Second Circuit, 2013.

21              I find that the ALJ did not merely provide a single

22  conclusory statement and instead provided a lengthy, detailed,

23  and thorough discussion of the medical treatment evidence that

24  indicated plaintiff's allegations were inconsistent with the

25  medical evidence, and the ALJ adequately explained his reasoning

1   for discounting the severity of plaintiff's subjective symptoms,

2   see T. 22 through 23, also T. 166 to 169, 171 to 173, 178 to

3   179, and lastly at 181.  I find that the ALJ properly relied on

4   plaintiff's testimony, T. 154 to 194, that he could do household

5   chores and care for himself without assistance in assessing his

6   subjective complaints.

7           Moreover, the ALJ properly relied on plaintiff's

8   admissions about his minimal treatment for mental health or

9   physical issues, in finding that his claims of total disability

10  were unsupported, see *Sickles v. Colvin*, 12-CV-774, that can be

11  found at 2014 WL 795978, at 22, and that is a Northern District

12  of New York, February 27, 2014, case.  In addition to discussing

13  inconsistent evidence about plaintiff's daily activities and

14  minimal treatment, the ALJ also appropriately discussed the

15  objective medical evidence that was inconsistent with

16  plaintiff's subjective complaints, see T. 19 through 20, T. 495

17  to 499, also T. 500 to 503, T. 522, T. 554, and T. 599.

18  Additionally, see *Suttles v. Berryhill,* 756 F. App'x 77 at 78,

19  Second Circuit, 2019, wherein it states Suttles's testimony

20  regarding her symptoms was contradicted by the medical evidence.

21  The ALJ properly assessed plaintiff's subjective symptoms.

22          I turn next to the seven factors pursuant to 20

23  C.F.R. 404.1529(c)(3)(i) through (vii).  In addition, the ALJ

24  must assess the claimant's subjective complaints by considering

25  the record in light of the following symptom-related factors:

1  One, claimant's daily activities; two, location, duration,

2  frequency and intensity of claimant's symptoms; three,

3  precipitating and aggravating factors; four, the type, dosage,

4  effectiveness, and side effects of any medication taken to

5  relieve symptoms; five, other treatment received to relieve

6  symptoms; six, any measures taken by the claimant to relieve

7  symptoms; and lastly, seven, any other factors concerning the

8  claimant's functional limitations and restrictions due to the

9  symptoms, see 20 C.F.R. Section 404.1529(c)(3), and

10  416.929(c)(3).  The ALJ must provide specific reasons for the

11  determination, see *Cichocki*, 534 F' App'x, at 76.

12          However, the failure to specifically reference a

13  particular relevant factor does not undermine the ALJ's

14  assessment as long as there is substantial evidence supporting

15  the determination, see also *Del Carmen Fernandez v. Berryhill*,

16  2019 WL 667743, at 11, and that case citing *Rousey v.

17  Commissioner of Social Security*, 285 F. Supp. 3d 723, at 744, a

18  Southern District of New York 2018 case, wherein it states

19  remand is not required where the evidence of record allows the

20  court to glean the rationale of an ALJ's decision, citing

21  *Cichocki*, 534 F. App'x, at 76, which is quoting *Mongeur v.

22  Heckler*, 722 F.2d, at 1040.

23          Although the ALJ, here, did not explicitly list all

24  of these factors, he did consider several of them.  And in any

25  event, this Court was able to glean the rationale of the ALJ's

1    decision.

2            I next, and lastly, turn to the third issue of

3    contention, and that is whether substantial evidence supports

4    the ALJ's step five finding.  At step five of the disability

5    analysis, the burden shifts to the ALJ to demonstrate that

6    there's work in the national economy that plaintiff can perform,

7    see *Poupore v. Astrue*, 566 F.3d 303, at 306, Second Circuit,

8    2009.

9            At step five, the ALJ had to demonstrate in this case

10   that plaintiff was capable of performing jobs that existed in

11   significant numbers in the national economy, see 20 C.F.R.

12   404.1520(a)(4)(v).  The vocational expert, as I call the VE,

13   testified that a hypothetical individual with plaintiff's RFC

14   could perform the representative jobs of marker, also mail

15   clerk, and lastly a cleaner, see T. 186 to 187.

16           As to the issue of overhead reaching, I find that the

17   VE's testimony resolved any conflict between the overhead

18   reaching requirements in the hypothetical question and the job

19   of marker.  The VE's testimony that, based on his knowledge of

20   how the marker job was performed, it did not require more than

21   occasional overhead reaching, was sufficient to resolve any

22   conflict with the Dictionary of Occupational Titles, known as

23   DOT for short, see *Michelle B. V. Commissioner of Social*

24   *Security*, 18-CV-171, 2019 WL 464975, at 10, n.18, Northern

25   District of New York, February 6, 2019, wherein it states VE's

1    testimony that she was using her experience to explain a

2    discrepancy with a lifting requirement in the DOT was sufficient

3    to resolve any conflict concerning lifting, see *Vanbenschoten v.*

4    *Commissioner of Social Security*, 16-0057, that can be found at

5    2017 WL 1435741, at 7, a Northern District of New York,

6    April 21, 2017, case, and it states ALJ can accept VE testimony

7    that contradicts the DOT where it is based on the VE's practical

8    experience.

9          Where the VE testified in this particular case that

10   there were about 141,000 marker jobs in the national committee,

11   see T. 186, that job alone was sufficient to meet the agency's

12   burden at step five, see T. 186 through 187, see also *Rosa v.*

13   *Commissioner of Social Security*, 14-1145, that can be found at

14   2015 WL 7574516, at 6, it is Northern District of New York,

15   November 4, 2015, R&R adopted, at 2015 WL 7573222, Northern

16   District of New York, November 25, 2015.  It states courts have

17   held that numbers varying from 9,000 upwards constituted

18   significant.

19         The ALJ's statement that the VE's testimony is

20   consistent with the information in the DOT, given that there was

21   a conflict with overhead reaching, and to the extent that the

22   ALJ's statement could be considered error because there was a

23   conflict which was resolved, any error is harmless due to the

24   detailed discussion at the hearing, see *Michelle B.*, 2019 WL

25   464975, at 10, n.18.  At step five, the ALJ demonstrated that

1  plaintiff was capable of performing jobs that existed in

2  significant numbers in the national economy.  That was my

3  conclusion with respect to the issue of overhead reaching and

4  the VE's testimony as it related to the interaction with the

5  DOT.

6          I now turn to the issue of contact with the public.

7  However, I find that, with respect to the limitation on

8  plaintiff's contact with the public, there is not substantial

9  evidence to support the ALJ's finding at step five.  The ALJ

10  found that the plaintiff's RFC included no more than incidental

11  contact with the public.  The VE testified that plaintiff could

12  perform the work of marker, housekeeping/cleaner, and mail

13  clerk.  The DOT definitions of those jobs indicate that they

14  involve employee interaction with people that is not

15  significant.  However, the VE's testimony did not provide any

16  explanation to the ALJ as to how his testimony conflicted with

17  the DOT or a reasonable basis to support the testimony.

18          The Court cannot determine whether, "not

19  significant," means, "no more than incidental," or, "brief and

20  superficial," or, "low contact," or some other level of contact

21  with coworkers and the public.  It is the VE's job to provide

22  information and then the ALJ has the affirmative duty to

23  identify and resolve any conflict between the VE's testimony and

24  the DOT before relying on such testimony, see *Patti v. Colvin*,

25  13-CV-1123, it's found at 2015 WL 114046, at 6, Western District

1   of New York, January 8, 2015, see also *Abbruscato v. Berryhill*,

2   16-CV-0117, that's found at 2017 WL 2531713, at 3, a Western

3   District of New York, June 12, 2017, case.  And in there it

4   states, although the DOT indicates that employee interaction

5   with people is not significant in the mailroom clerk and

6   housekeeping jobs, the Court cannot determine whether this means

7   brief and superficial contact or low contact or some other level

8   of contact with coworkers and the public.  In that, the Court

9   went on to say it is the VE's job to provide this information,

10  and then the ALJ has an affirmative duty to identify and resolve

11  any conflict between the VE's testimony and the DOT before

12  relying on such testimony.  On that point, see also *White v.*

13  *Colvin*, 2016 WL 1555709, at 6, it's a Northern Distinct of

14  Illinois, April 18, 2016, case, remanding where, among other

15  things, the VE conceded that DOT indicated that jobs of hand

16  packager, mail clerk, and housekeeper involved contact with the

17  public, coworkers, and supervisors, and that it didn't say how

18  frequently.  That certainly could run afoul of the limitation to

19  only occasional contact with coworkers, and most likely would

20  run afoul of the limitation to only incidental contact with the

21  public, but the ALJ did not resolve this conflict.

22          Accordingly, in this particular case, it is my

23  decision to remand this case and that remand is required.  The

24  remand is required primarily on this last issue that I just

25  covered, contact with the public.

1          Based on the findings as set forth herein on the

2    record, plaintiff's motion for judgment on the pleadings, Docket

3    No. 12, is granted, the Commissioner's motion for judgment on

4    the pleadings, Docket No. 16, is denied, and this matter is

5    remanded to the Commissioner for further administrative

6    proceedings consistent with this opinion and decision pursuant

7    to sentence four of 42, United States Code, Section 405(g).

8    That's the decision of the Court.

9          Ms. Krupar, anything else?

10          MS. KRUPAR:  No, your Honor.  Thank you for your time

11    today.

12          THE COURT:  All right.  Ms. Stewart?

13          MS. STEWART:  Nothing from me.  Thank you.

14          THE COURT:  All right.  Very good.  Thank you both

15    for excellent briefs and also very, very good arguments.  And my

16    decision and order that I just set forth on the record will be

17    transcribed and will be available for the parties in addition

18    to, as I indicated, the summary order, which will be literally a

19    two-page order simply summarizing my final result.

20          But, otherwise, thank you both for very good work

21    product, have a good rest of the week, and court stands

22    adjourned.  Thank you both.

23          MS. KRUPAR:  Thank you.

24          MS. STEWART:  Thank you.

25          (Time noted:  10:58 a.m.)

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5           I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6    NYRCR, Official U.S. Court Reporter, in and for the United
 7    States District Court for the Northern District of New York, DO
 8    HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9    States Code, that the foregoing is a true and correct transcript
10    of the stenographically reported proceedings held in the
11    above-entitled matter and that the transcript page format is in
12    conformance with the regulations of the Judicial Conference of
13    the United States.
14
15           Dated this 30th day of July, 2020.
16
17        x  Hannah F. Cavanaugh
18           HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19           Official U.S. Court Reporter
20
21
22
23
24
25
```

HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR